**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| STATE OF MISSOURI, et al., | |
| Plaintiffs, | |
| v. | No. 4:21-cv-01300-DDN |
| JOSEPH R. BIDEN, et al. | |
| Defendants. | |

**<u>DEFENDANTS' SUPPLEMENTAL BRIEFING</u>**

## TABLE OF CONTENTS

TABLE OF CONTENTS............................................................................................................i

INTRODUCTION.................................................................................................................. 1

PROCEDURAL HISTORY..................................................................................................... 2

LEGAL STANDARDS ........................................................................................................... 3

ARGUMENT ......................................................................................................................... 3

   I.    The Court should deny all of Plaintiffs' claims........................................................... 3

     A.        Plaintiffs' first claim fails as a matter of law. ........................................... 3

     B.        Counts Five through Seven are moot and meritless ................................. 6

     C.        Challenges to the FAR Memo fail (Claims 8 & 9)................................10

     D.        Plaintiffs' constitutional claims are meritless ........................................12

   II.   Most Plaintiffs lack standing and none face irreparable harm.....................................15

   III.  The equities and the public interest weigh against injunctive relief. ...........................19

   IV.  In all events, any relief should be limited. .................................................................20

CONCLUSION.....................................................................................................................20

# TABLE OF AUTHORITIES

## <u>CASES</u>

*Adarand Constructors, Inc. v. Pena*,
515 U.S. 200 (1995)..............................................................................16

*AFL-CIO v. Kahn*,
618 F.2d 784 (D.C. Cir. 1979) ..................................................3, 5, 14

*Akiachak Native Cmty. v. U.S. Dep't of Interior*,
827 F.3d 100 (D.C. Cir. 2016) .........................................................6, 8

*Ala. Ass. of Realtors v. HHS*,
141 S. Ct. 2485 (2021) ............................................................................5

*Am. Fed'n of Gov't Emps., AFL-CIO v. Carmen*,
669 F.2d 815 (D.C. Cir. 1981) ...............................................................5

*Arbitraje Casa de Cambio S.A. de CV v. United States*,
79 Fed. Cl. 235 (2007) ............................................................................5

*Benning v. Georgia*,
391 F.3d 1299 (11th Cir. 2004) ...........................................................13

*Chamber of Com. of U.S. v. Napolitano*,
648 F. Supp. 2d 726 (D. Md. 2009) .......................................................5

*City of Albuquerque v. U.S. Dep't of Interior*,
379 F.3d 901 (10th Cir. 2004) ........................................................5, 14

*Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*,
634 F.3d 1005 (8th Cir. 2011) ...............................................................3

*DaimlerChrysler Corp. v. Cuno*,
547 U.S. 332 (2006).............................................................................10

*Dalton v. Specter*,
511 U.S. 462 (1994)......................................................................3, 7, 8

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
140 S. Ct. 1891 (2020) ............................................................................7

*Florida v. HHS*,
— F.4th —, 2021 WL 5768796 (11th Cir, Dec. 6, 2021) .......................4, 5, 10, 19

*Florida ex rel. Cobb v. U.S. Dep't of Justice*,
  No. 5:10-cv-118,  2010 WL 3211992  (N.D. Fla. Aug. 12, 2010), *aff'd*,
  440 F. App'x 860 (11th Cir. 2011) .......................................................................16

*Franklin v. Massachusetts*,
  505 U.S. 788 (1992)..................................................................................3, 7, 8

*Gill v. Whitford*,
  138 S. Ct. 1916 (2018)..................................................................................20

*Gov't of Manitoba v. Bernhardt*,
  923 F.3d 173 (D.C. Cir. 2019) ....................................................................15, 16

*Iowa ex rel. Miller v. Block*,
  771 F.2d 347 (8th Cir. 1985) ..........................................................................15

*Kentucky v. Biden*,
  No. 3:21-CV-00055-GFVT, 2021 WL 5587446 (E.D. Ky. Nov. 30, 2021)............9, 10, 11, 13

*Ky. Dep't of Hum. Resources v. Donovan*,
  704 F.2d 288 (6th Cir. 1983) ..........................................................................13

*Liberty Mut. Ins. Co. v. Friedman*,
  639 F.2d 164 (4th Cir. 1981) ............................................................................ 3

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)...........................................................................14, 15, 18, 19

*Madsen v. Women's Health Ctr. Inc.*,
  512 U.S. 753 (1994)........................................................................................20

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)...................................................................................15, 16

*Massachusetts v. Mellon*,
  262 US 447 (1923)........................................................................................15

*Nken v. Holder*,
  556 U.S. 418 (2009)........................................................................................19

*NRDC v. U.S. Dep't of State*,
  658 F. Supp. 2d 105 (D.D.C. 2009) ...............................................................7, 8

*Oklahoma ex rel. Pruitt v. Sebelius*,
  No. 11-30, 2013 WL 4052610 (E.D. Okla. Aug. 12, 2013) .................................16

*Pennhurst State Sch. & Hosp. v. Halderman*,
  451 U.S. 1 (1981) ..........................................................................................13

*Perkins v. Lukens Steel Co.*,
   310 U.S. 113 (1940) ............................................................................................. 1

*Printz v. United States*,
   521 U.S. 898 (1997) ............................................................................................12

*Roudachevski v. All-Am. Care Centers, Inc.*,
   648 F.3d 701 (8th Cir. 2011) .............................................................................15

*Tulare Cty. v. Bush*,
   185 F. Supp. 2d 18 (D.D.C. 2001), *aff'd*, 306 F.3d 1138 (D.C. Cir. 2002) ............................ 8

*UAW v. Chao*,
   325 F.3d 360, (D.C. Cir. 2003) ......................................................................3, 4, 5

*United States v. Brewer*,
   766 F.3d 884 (8th Cir. 2014) ............................................................................... 9

*Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*,
   454 U.S. 464 (1982) ............................................................................................12

*Wachovia Bank v. Watters*,
   431 F.3d 556 (6th Cir. 2005), *aff'd*, 550 U.S. 1 (2007) ..........................................12

*Wyoming v. U.S. Dep't of the Interior*,
   674 F.3d 1220 (10th Cir. 2012) .........................................................................16

*Youngstown Sheet & Tube v. Sawyer*,
   343 U.S. 579 (1952) ............................................................................................ 3

## STATUTES

3 U.S.C. § 301 ........................................................................................................ 7

5 U.S.C. § 553 ....................................................................................................2, 8

5 U.S.C. § 704 ......................................................................................................10

5 U.S.C. § 706 ....................................................................................................2, 6

40 U.S.C. § 101 ..................................................................................................... 2

40 U.S.C. § 121 ..................................................................................................2, 3

40 U.S.C. § 1707 .................................................................................................. 8

41 U.S.C. § 1707 ......................................................................................... 2, 8, 9, 11

## REGULATIONS

Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce
  Task Force Guidance for Federal Contractors and the Revised Economy & Efficiency
  Analysis (Nov. OMB Determination),
  86 Fed. Reg. 63,418 (2021) ....................................................................................6, 9

Ensuring Adequate COVID Safety Protocols for Federal Contractors,
  Exec. Order 14,042, 86 Fed. Reg. 50,985 (2021) ...........................................................4, 18

Federal Acquisition Regulation; Contractor Responsibility, Labor Relations Costs, and Costs
  Relating to Legal and Other Proceedings,
  66 Fed. Reg. 17,754 (2001) ......................................................................................... 9

Federal Acquisition Regulation: Non-Retaliation for Disclosure of Compensation
  Information,
  81 Fed. Reg. 67,732 (2016) ......................................................................................... 9

## UNITED STATES CONSTITUTION

U.S. Const. art. II..........................................................................................................12

U.S. Const. art. IV, § 3...................................................................................................12

## OTHER AUTHORITIES

*DOE Order*,
  https://perma.cc/3LWH-CTTW .................................................................................18

FAR Open Cases Report,
  https://www.acq.osd.mil/dpap/dars/opencases/farcasenum/far.pdf .......................................10

FDA, "FDA Approves First COVID-19 Vaccine,"
  https://perma.cc/TNN7-QQD8 ................................................................................9, 18

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| STATE OF MISSOURI, et al., | |
| Plaintiffs, | |
| v. | No. 4:21-cv-01300-DDN |
| JOSEPH R. BIDEN, et al. | |
| Defendants. | |

## DEFENDANTS' SUPPLEMENTAL BRIEFING

### INTRODUCTION

"Like private individuals and businesses, the Government enjoys the unrestricted power to produce its own supplies, to determine those with whom it will deal, and to fix the terms and conditions upon which it will make needed purchases." *Perkins v. Lukens Steel Co.*, 310 U.S. 113, 127 (1940). Contrary to the manner in which Plaintiffs have framed this dispute, EO 14,042 and its implementing regulations are not actions taken by the President in a regulatory capacity. Instead, they are properly viewed as the actions of the CEO of the Executive Branch, issuing a policy for how the government will act as a market participant—exactly the type of action Presidents have taken, Congress has accepted, and courts have affirmed for half a century.

As described in our prior briefs and as set forth in more detail below, Plaintiffs have failed to carry their heavy burden to justify preliminary relief, let alone ultimate, permanent relief under Rule 65. If granted, the relief Plaintiffs seek would turn our federal system on its head by preventing the United States from entering contracts with third parties on its own terms.[1] This Court

---

[1] On December 7, 2021, the United States District Court for the Southern District of Georgia issued a nationwide preliminary injunction enjoining the federal government from enforcing the vaccine mandate for federal contractors and subcontractors. *See* Order, *Georgia v. Biden*, No. 1:21-cv-163 (S.D. Ga.), ECF No. 94. Defendants are taking immediate steps to comply

should not embrace that result and, accordingly, should deny Plaintiffs' motion.

## PROCEDURAL HISTORY

Defendants refer to their opposition to Plaintiffs' motion for a preliminary injunction and to the parties' joint statement of facts for the relevant factual background. Defs.' Opp'n to Pls.' Mot. for Prelim. Inj., ECF No 20 (Defs.' Opp'n); Jt. Stmt. of Facts, ECF No. 27.

Plaintiffs bring 12 claims against Defendants. Compl. ¶¶ 91–186, ECF No. 1. In Count One, they challenge the President's issuance of Executive Order 14,042 (EO 14,042 or the Executive Order) and the ensuing initial determination by the Acting Director of the Office of Management and Budget (OMB) in September 2021 (September OMB Determination or September Determination) as violating the Federal Property and Administrative Services Act (Procurement Act" or FPASA), 40 U.S.C. §§ 101, 121. Compl. ¶¶ 91–96. In Counts Two, Five, Six, and Seven, they challenge the OMB's September Determination as violative of the Administrative Procedure Act (APA), 5 U.S.C. §§ 553, 706, and the procedural requirements in the Procurement Policy Act, 41 U.S.C. § 1707. Compl. ¶¶ 98–104, 113–45. In Counts Eight and Nine, they claim that a memo published by the Federal Acquisition Regulatory Council (the FAR Memo) that provided initial direction for agencies to implement the requirements in EO 14,042 violated the APA and the Procurement Policy Act. Compl. ¶¶ 147–157. Finally, in Counts Three, Four, Ten, Eleven, and Twelve, Plaintiffs allege that EO 14,042 and the ensuing executive action violate the Constitution in various ways. Compl. ¶¶ 105–112, 158–86.

---

with that preliminary injunction. The information provided in this supplemental brief describes the state of affairs before the nationwide preliminary injunction was issued by that court. This nationwide injunction currently prevents Defendants from enforcing the clause at issue in this lawsuit. So long as that nationwide injunction remains in place, there is no need for this Court is issue an expedited ruling. And if the Georgia district court ultimately orders a permanent injunction with nationwide effect, and that judgment is affirmed on appeal, this case would be moot, obviating the need for this Court to rule at all.

On November 4, 2021, Plaintiffs moved for a preliminary injunction. Pls.' Mot. for Prelim. Inj., ECF No. 8, to which Defendants responded, Defs' Opp'n. On November 24, 2021, this Court ordered that it would consolidate the preliminary injunction proceedings with a trial on the merits pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure and ordered the parties to submit a joint statement of undisputed material facts and supplemental memoranda. Order, ECF No. 26.

## LEGAL STANDARDS

"To obtain a permanent injunction, [a plaintiff is] required to show: (1) its actual success on the merits; (2) that it faces irreparable harm; (3) that the harm to it outweighs any possible harm to others; and (4) that an injunction serves the public interest." *Cmty. of Christ Copyright Corp. v. Devon Park Restoration Branch of Jesus Christ's Church*, 634 F.3d 1005, 1012 (8th Cir. 2011). Plaintiffs fail every element.

## ARGUMENT

I.   **The Court should deny all of Plaintiffs' claims.**

A.   **Plaintiffs' first claim fails as a matter of law.**

Plaintiffs' first claim is not a proper cause of action. Plaintiffs attempt to bring a stand-alone claim that the President violated the Procurement Act, but identify no statute that authorizes such cause of action. While Plaintiffs might be able to raise an *ultra vires* claim, they have not done so. *Compare* Am. Compl. at Count 10, *Florida v. Nelson*, No. 8:21-cv-2524-SDM-TGW, (M.D. Fla. Nov. 29, 2021), ECF No. 23 (properly pleading an *ultra vires* claim). Moreover the APA does not apply to the President. *See Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992); *Dalton v. Specter*, 511 U.S. 462, 470 (1994)). Count One can be dismissed for this reason alone.

Count One also fails on the merits. Plaintiffs argue that when the president issued Executive Order 14,042, he exceeded his authority under the Procurement Act. That is wrong. "'When the President acts pursuant to an express or implied authorization of Congress, his authority is at

its maximum.'" *AFL-CIO v. Kahn*, 618 F.2d 784, 787 n. 13 (D.C. Cir. 1979) (quoting *Youngstown Sheet & Tube v. Sawyer*, 343 U.S. 579, 635–36 (1952) (Jackson, J., concurring)).

Congress expressly authorized the President to prescribe federal procurement policies and directives so long as those policies are "consistent" with the Procurement Act. 40 U.S.C. § 121(a). Courts have approved, so long as those policies and directives are "reasonably related to the Procurement Act's purpose of ensuring efficiency and economy in government procurement." *Liberty Mut. Ins. Co. v. Friedman*, 639 F.2d 164, 170 (4th Cir. 1981); *accord UAW v. Chao*, 325 F.3d 360, (D.C. Cir. 2003); *see also* Defs.' Opp'n at 10–16. Courts have "emphasized the necessary flexibility and 'broad-ranging authority'" that the Act provides and have described judicial review as "lenient." *UAW-Lab. Emp. & Training Corp. v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003).

The President here set a government-wide policy[2] of requiring certain contractors to include a clause requiring compliance with Task Force Guidelines that the OMB Director determines would promote economy and efficiency in procurement. EO, § 2(a). Workplace safeguards aimed at preventing COVID-19's spread will "decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites where they are performing work for the Federal Government." EO 14,042 § 1; *see also* Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce Task Force Guidance for Federal Contractors and the Revised Economy & Efficiency Analysis, 86 Fed. Reg. 63,418, 63,421 (2021) (Nov. OMB

---

[2] Plaintiffs also argue under Count Seven that EO 14,042 is a "regulation," Compl. ¶ 140, but that ignores that the EO directs *other* agencies to exercise regulatory authority. Specifically, it directs the FAR Council to issue a government-wide regulation and directs agencies "to exercise any applicable authority" to implement this policy in the meantime. EO § 14,042, § 3; *see* Defs.' Opp'n at 16–17. The Executive Order sets a government-wide policy and directive, which is plainly allowed under the text of the Procurement Act; it is not a regulation.

Determination). While Plaintiffs "raise[] a variety of arguments [that] disagree with those conclusions," Plaintiffs "essentially seeks to substitute [their] views on epidemiology for the [President's] judgment." *Fla. v. HHS*, — F.4th —, 2021 WL 5768796, at *15 (11th Cir, Dec. 6, 2021). The types of arguments raised by Plaintiffs are not enough to prove that the Presidential policy and directives announced in EO 14,042 lacked an appropriate nexus to economy and efficiency in government procurement.

Plaintiffs appear to invoke the major questions doctrine by arguing that because the government has not previously required vaccinations for its contracting workforce, there must be "a clear statement from Congress" specifically authorizing a "contractor vaccine mandate" for the policy to be valid. Compl. ¶ 95. But this argument ignores that Congress provided a broad grant of power in the Procurement Act. "[B]y its very nature, a broad grant of authority . . . does not require an indication that specific activities are permitted." *Fla.*, 2021 WL 5768796 at *12 (also explaining why *Alabama Association of Realtors v. HHS*, 141 S. Ct. 2485 (2021), is not relevant).

First, the exercise of Procurement Act authority to require contract provisions that have economic and political significance is nothing new. *See, e.g.*, *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901 (10th Cir. 2004) (urban renewal); *Chao*, 325 F.3d 360 (collective bargaining rights); *Am. Fed'n of Gov't Emps., AFL-CIO v. Carmen*, 669 F.2d 815 (D.C. Cir. 1981) (energy conservation during an oil crisis); *Kahn*, 618 F.2d at 790 (noting multiple Presidents "prominent[ly]" used FPASA to impose "a series of anti-discrimination requirements for Government contractors"); *Chamber of Com. of U.S. v. Napolitano*, 648 F. Supp. 2d 726, 729 (D. Md. 2009) (employee work eligibility and immigration status). Every single one of these procurement policies touched on a significant political issue, and some had far-reaching economic consequences. But those contract clauses, like the one here, do not regulate third parties, and apply only to those

entities that choose to do business with the federal government.

Second, the clause at issue in this case—just like the historical examples—does not significantly alter the balance between federal and state power. When contracting with other parties, "the sovereign steps off the throne and engages . . . as private parties, individuals or corporations" in the marketplace. *Arbitraje Casa de Cambio S.A. de CV v. United States*, 79 Fed. Cl. 235, 240–41 (2007). When the federal government and states enter into contracts, they are acting as market participants, not in their respective roles in our federal system.

Third, Congress has long understood and accepted that the Procurement Act granted broad authority to the President. Defs.' Opp'n at 13. For these reasons, the major questions doctrine does not apply, and the President's EO falls comfortably within the scope of Congress's authorization.

### B.      Counts Five through Seven are moot and meritless (OMB Determination)

#### 1.      *Plaintiffs' challenges to the OMB determination are not justiciable.*

In Counts Six and Seven, Plaintiffs allege that the September OMB Determination was not the product of "reasoned decisionmaking," as required under the APA, 5 U.S.C. § 706(2), and was issued in excess of OMB's authority. Compl. ¶¶ 113–46. As Defendants explained in their opposition brief, however, these claims are now moot because the September OMB Determination has been rescinded and superseded by OMB's November Determination, which extended the vaccination deadline for covered contract employees to January 18, 2022, and explained in more detail why the Acting OMB Director determined that the Task Force Guidance promoted economy and efficiency in federal contracting.[3] Defs.' Opp'n at 19–20; *see Akiachak Native Cmty. v. U.S. Dep't*

---

[3] This Court requested supplemental briefing on claims other than "those founded on the federal Administrative Procedure Act," Order, ECF No. 26, which are Counts Six, Seven, and Eight, Compl. ¶¶ 121–50. The parties agree, however, that the Court can rule on threshold legal issues that require no further factual development like whether a challenge to the September OMB Determination is moot or whether the September OMB Determination is subject to the APA at all.

*of Interior*, 827 F.3d 100, 113 (D.C. Cir. 2016) (collecting cases demonstrating that it is an "un-controversial and well-settled principle of law" that "when an agency has rescinded and replaced a challenged regulation, litigation over the legality of the original regulation becomes moot").

Plaintiffs argue that the September OMB Determination is somehow not moot because OMB in effect reinstated it in its November Determination. Pls.' Reply at 8, ECF No. 23. As an initial matter, the November Determination substantively differs from the September Determination by extending the vaccination deadline for covered contract employees. 86 FR at 63,423. Further, Plaintiffs' APA claim in Count Six solely focuses on whether the September OMB Determination "ignored important aspects of the problem," Compl. ¶¶ 128, 130–133, and whether it provided any explanation for approving the Task Force Guidance, Compl. ¶ 129; *see also id.* ¶ 144 (Count Seven) (describing the content of OMB's prior determination in arguing that the Determination exceeds OMB's delegated Presidential Authority). The OMB Director's additional explanation in the November Determination therefore eviscerates the allegations in Count Six and materially bears on Count Seven, and it therefore makes little sense why Plaintiffs continue to press these claims instead of amending their Complaint as plaintiffs in many other similar lawsuits have done. *See, e.g.*, Am. Compl., *Florida v. Nelson*, 8:21-cv-2524 (M.D. Fla.), ECF No. 23; Am. Compl., *Georgia v. Biden*; 1:21-cv-163 (S.D. Ga.), ECF No. 54; Am. Compl., *Louisiana v. Biden*, 1:21-cv-3867 (W.D. La.), ECF No. 21; Am. Compl., *Kentucky v. Biden*, 3:21-cv-00055 (E.D. Ky.), ECF No. 22. Plaintiffs failed to amend their claim to challenge the operative guidance. They challenges to rescinded guidance is moot and must be dismissed.

---

Should the Court agree with Defendants' arguments, then the Court should dismiss those claims in their entirety. Pursuant to the Court's order, this brief does not discuss merits of those Counts.

Even if Plaintiffs had a live claim challenging the September Determination under the APA, the claim would still not be subject to judicial review because the OMB Director was acting pursuant to presidential authority delegated under 3 U.S.C. § 301 and, therefore, did not engage in agency action subject to APA review. *NRDC v. U.S. Dep't of State*, 658 F. Supp. 2d 105, 109 (D.D.C. 2009) (citing *Franklin v. Massachusetts*, 505 U.S. 788, 800–01 (1992); *Dalton v. Specter*, 511 U.S. 462, 470 (1994)); *see also Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1908 (2020) (recognizing that an "agency can deal with the problem afresh by taking new agency action" (internal quotation marks omitted)).

Plaintiffs do not challenge the President's ability to delegate, pursuant to 3 U.S.C. § 301, the decision of whether the Guidelines promote economy and efficiency to the OMB Director. Nor do Plaintiffs cite any authority for the proposition that presidential action delegated pursuant to Section 301 is reviewable under the APA. Rather, Plaintiffs claim in circular fashion that because OMB is an agency, it must be engaging in agency action, thus ignoring the distinction between Presidential and Congressional authority. Adopting Plaintiffs' position would deprive the President of the flexibility that Congress specifically provided in Section 301. "Any argument suggesting that this action is agency action would suggest the absurd notion that all presidential actions must be carried out by the President him or herself in order to receive the deference Congress has chosen to give to presidential action." *Tulare Cty. v. Bush*, 185 F. Supp. 2d 18, 28–28 (D.D.C. 2001), *aff'd*, 306 F.3d 1138 (D.C. Cir. 2002).

## 2. *The OMB Determination complied with any applicable procedural requirements.*

In Counts Two and Five, Plaintiffs claim that OMB's determination was issued without following the notice and comment procedures set forth in the Administrative Procedure Act, 5 U.S.C. § 553, and the Procurement Policy Act, 40 U.S.C. § 1707. Here again, Plaintiffs' claim is

moot in light of the superseding November Determination, *Akiachak*, 827 F.3d at 113. Further, neither statute applies because the OMB Director was acting pursuant to Presidential authority, *see NRDC*, 658 F. Supp. 2d at 109; *Franklin*, 505 U.S. at 800–01; *Dalton*, 511 U.S. at 470, and the APA's procedural requirements do not apply because that provision explicitly excludes any matter "relating to . . . contracts," 5 U.S.C. § 553(a)(2). But to the extent that either statute applies, there can be no dispute that the November OMB Determination satisfied any notice requirement.

Section 1707(b) requires notice of a "proposed procurement policy" to be published in the Federal Register and open for comment for at least 30 days. 41 U.S.C. § 1707(b). While Section 1707 usually requires a procurement policy to "not take effect until 60 days after it is published for public comment in the Federal Register," that requirement can be waived if "urgent and compelling circumstances make compliance with the requirements impracticable." 41 U.S.C. § 1707(d). Similarly, under the APA, "[a]n agency may waive the requirements of a notice and comment period and the 30–day grace period before publication if the agency finds 'good cause' to do so." *United States v. Brewer*, 766 F.3d 884, 888 (8th Cir. 2014) (internal citation omitted).

The November OMB Determination easily satisfies the standards under both the APA and the Procurement Policy Act in describing the circumstances that required the November Determination take immediate effect while receiving comments prospectively. 86 Fed. Reg. at 63,423–24.

An "important purpose of the [revised] Task Force Guidance" was to "align[] the vaccination deadline for Federal contractors with the vaccination deadline for private companies under recent regulatory actions," which is January 18, 2022, to "make it easier for private employers to administer successful vaccination policies across their workforce." *Id.* The government regularly invokes § 1707(d) to harmonize deadlines, enable regulatory certainty, and clarify compliance

obligations, as it did here.[4] *Compare, e.g.*, FAR: Non-Retaliation for Disclosure of Compensation Information 81 FR 67,732 (Sept. 30, 2016), with 86 FR at 63,423–24; *see also* 66 FR 17,754, 17,755 (Apr. 3, 2001) (invoking § 1707(d) to immediately stay a FAR rule because "otherwise the rule imposes burdens that the Government and contractors are not prepared to meet").

The November OMB Determination therefore satisfied any procedural requirements under the APA and Procurement Policy Act. *See Kentucky v. Biden*, No. 3:21-CV-00055-GFVT, 2021 WL 5587446, at *12 (E.D. Ky. Nov. 30, 2021) (concluding that plaintiffs were unlikely to succeed in their challenge to the November OMB Determination because Defendants explained that "the compliance date was delayed to benefit federal contractors and ensure that they would have sufficient time to comply with the mandate"); *State of Fla. v. Dep't of Health & Hum. Servs.*, No. 21-14098-JJ, 2021 WL 5768796, at *14 (11th Cir. Dec. 6, 2021) (concluding that the Secretary's reliance on the "urgency presented by the ongoing pandemic" constituted good cause to bypass APA notice-and-comment procedures in issuing an interim final rule requiring vaccinations for employees at facilities receiving Medicare and Medicaid funding).

## C.    Challenges to the FAR Memo fail (Claims 8 & 9)

In Counts Eight and Nine, Plaintiffs challenge the FAR Memo. That memo provides initial direction to and a sample for agencies to implement a COVID-19 safety clause in contracts while the FAR Council pursues a final rule on the subject. Compl. ¶¶ 147–57. As an initial matter, the

---

[4] Further, "[t]he pandemic continues to present an imminent threat to the health and safety of the American people," 86 FR 63,423, and Plaintiffs' contention that the government should have acted sooner to formulate a policy to require covered contractor vaccinations in this ever-evolving environment rings hollow, *see* Pls.' Reply at 14, particularly in light of the surge in cases due to the Delta variant of the virus strain and that the FDA approved the first full license for a COVID-19 vaccine on August 23, 2021, just two weeks before the President issued EO 14,042 on September 9. *See* FDA, "FDA Approves First COVID-19 Vaccine," available at https://perma.cc/TNN7-QQD8.

FAR Memo is not subject to judicial review under the APA because it not a "final agency action,"[5]
5 U.S.C. § 704, and Plaintiffs' APA claims in Counts Eight and Nine fail accordingly. Simply put,
there is no dispute that the FAR Council is in the process of revising the FAR. *See* FAR Open
Cases Report at 2, *available at* https://www.acq.osd.mil/dpap/dars/opencases/farcasenum/far.pdf
(indicating that on September 29, 2021, the FAR Council opened a case to implement EO 14,042
by drafting a proposed rule). When promulgated, the FAR Council's amendment to the FAR will
be a binding, government-wide regulation—the challenged interim guidance is not. *Kentucky*,
2021 WL 5587446, at *11 ("[A]s Defendants correctly argue, Executive Order 14,042 instructed
the FAR Council to 'take *initial* steps to implement' the contract clause. Therefore, the FAR Coun-
cil Guidance is not final agency action and is therefore not subject to judicial review under the
APA." (citation omitted)). Plaintiffs argue that because "[t]he clear intent of the EO is for agencies
to use the FAR Guidance in their deviations," the FAR Memo is legally binding. Pls.' Reply at 14.
But that is plainly incorrect. Nothing in the FAR Memo, or the Executive Order itself, requires
agencies to implement the FAR COVID safety clause into their contracts; the clause is only a
suggested template. Under Plaintiffs' theory, *any* nonbinding guidance would turn into final
agency action any time any agency followed that guidance.

Section 1707's procedural notice requirements also do not apply to the FAR Memo because
it is, at most, nonbinding guidance, not "a procurement policy, regulation, procedure, or form"

---

[5] For similar reasons, Plaintiffs lack standing to challenge the FAR Memo, since invalidat-
ing the memo does not prevent agencies from pursuing bilateral modifications to existing contracts
or prevent agencies from requiring the COVID safety clause in new contracts. *See* Defs.' Opp'n
at 23–24. Plaintiffs' contention that they "clearly have standing to challenge the contractor man-
date, wherever it appears," Pls.' Reply at 15 n.7, is wholly unsupported. "Plaintiffs' reading of [the
law] to allow standing as to one claim to suffice for all claims arising from the same 'nucleus of
operative fact' would have remarkable implications . . . . [S]tanding is not dispensed in gross."
*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).

with "a significant effect beyond" the FAR Council's operating procedures. 41 U.S.C. § 1707(b). *Kentucky*, 2021 WL 5587446, at *11 ("§ 1707 does not apply to the FAR Council Guidance because it constitutes nonbinding guidance that does not rise to the level of a 'procurement policy, regulation, procedure, or form.'"). Plaintiffs thus cannot prevail on their Section 1707 claim in Count Nine.

**D.    Plaintiffs' constitutional claims are meritless (Counts 3, 4, and 10–12).**

    *1.    The challenged actions do not violate the Tenth Amendment.*

Plaintiffs bring three counts under the Tenth Amendment: Count Three in which Plaintiffs allege that the Federal Government lacks the constitutional authority to include a contract clause requiring vaccination; Count Four in which Plaintiffs claim that contract clauses violate the anti-commandeering doctrine; and Count Eleven which purports to be a stand-alone claim of Federalism but is duplicative of Count Three.

Counts Three and Eleven fail because when the government exercises power pursuant to an enumerated power, the Tenth Amendment is no bar. *See, e.g.*, *Wachovia Bank v. Watters*, 431 F.3d 556, 563 (6th Cir. 2005), *aff'd*, 550 U.S. 1 (2007). The challenged Presidential and agency actions were done pursuant to statutes validly enacted under Congress's enumerated powers—including the Property Clause—and the authority vested in the President by the Constitution. *See* U.S. CONST., art. IV, § 3, cl. 2; *id.* art. II; *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc.*, 454 U.S. 464, 480 (1982). Plaintiffs have not established that setting contract terms with third parties exceeds the Federal Government's constitutional authority.

In Count Four, Plaintiffs argue that it is unconstitutional for a contract between a state and the Federal Government to include a clause that compels a State to perform according to the terms of the contract—because requiring compliance would "commandeer" state officials. As explained in Defendants' opposition, adopting Plaintiffs' view of the anti-commandeering doctrine would

render all contracts between federal and state governments unconstitutional. Defs.' Opp'n at 29. The Federal Government is not commandeering anyone—if Plaintiff States do not wish to comply with a clause in a federal contract, they should not bid for or sign that contract. *See Printz v. United States*, 521 U.S. 898, 919 (1997); *id.* at 936 (O'Connor, J., concurring) ("Congress is also free to amend the interim program to provide for its continuance on a contractual basis with the States if it wishes, as it does with a number of other federal programs.").

## 2.   *The challenged actions do not violate the Spending Clause (Count 12)*[6]

Count Twelve claims that EO 14,042 and its implementing guidance violate the Spending Clause for three reasons: (1) the clause is an unconstitutional condition; (2) the clause is an ambiguous condition; and (3) the clause is not related to "the federal interest in particular national projects or programs." Compl. ¶¶ 177–186.[7]

First, the only supposed "unconstitutional conditions" identified by Plaintiffs relate to the Tenth Amendment. Plaintiffs cite no case where any contract was found to have "unconstitutional conditions" under the Tenth Amendment. And regardless, that argument fails because there is no Tenth Amendment violation here. *See supra* I.D.1.

Second, EO 14,042 and its implementing guidance unambiguously put contractors on notice of any obligations. The case relied on Plaintiffs, *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981), requires nothing more. *See Benning v. Georgia*, 391 F.3d 1299, 1307 (11th Cir. 2004). *Pennhurst*'s holding does not apply to contracts because the contract itself puts the

---

[6] Plaintiffs' preliminary-injunction brief for argued that the government violated the Commerce Clause. Pls.' Mem. at 36–37. But no such claim appears in their complaint, and they withdrew that argument in reply. Pls.' Reply, at 15, n.8.

[7] Plaintiffs argue in their reply that the challenged clause separately violates the Spending Clause because it is "unconstitutionally coercive." Pls.' Reply at 16. That claim is not properly before this court because Plaintiffs failed to raise in their opening brief, did not include such a claim in their complaint, and cite to no facts in the record support such a claim.

state on notice that there are conditions. *Pennhurst* concerned a federal grant program that "was unclear as to whether the states incurred *any* obligations *at all* by accepting federal funds." *See id.* (emphasis added). But "the *existence* of the condition itself" here is "explicitly obvious" because it is included as a clause in the contract. *Id.* (emphasis added); *see also Kentucky*, 2021 WL 5587446 at *7 n.9 (rejecting a similar Spending Clause argument on this basis); *Ky. Dep't of Hum. Resources v. Donovan*, 704 F.2d 288, 299 n.17 (6th Cir. 1983). Federal contractors are capable of making informed, voluntary decisions to accept an obligation to comply with periodically updated guidelines. *See Donovan*, 704 F.2d at 299 ("Thus, the state voluntarily accepts the Secretary's power to alter the program and require compliance."). Evidence in this case show that states, like private parties, regularly agree to contracts with uncertain terms. *See* Pls.' Mem., Ex. J, Decl. of Andrew Armacast, ECF No. 9-10 (describing an "Indefinite Delivery, Indefinite Quantity Subcontract" with a private prime contractor, which by definition, has uncertain and indefinite terms).

Third, Plaintiffs cite no case where a court has found federal contract obligations invalid under a federal interest requirement. And in any event, the President has already determined that including the COVID-19 safety clause is in the federal interest and the OMB Director provided a detailed explanation for why such a clause promotes federal interests. *See* Defs.' Opp'n at 13–16.

### 3. *Plaintiffs' nondelegation claim is unsupported (Count 10).*

Plaintiffs' reply does not attempt to defend its nondelegation doctrine claim because it plainly fails under existing law. But as every court of appeals to consider the question has recognized, the Procurement Act's economy-and-efficiency standard supplies an intelligible principle that "can be applied generally to the President's actions to determine whether those actions are within the legislative delegation." *Kahn*, 618 F.2d at 793 n.51; *see City of Albuquerque*, 379 F.3d at 914–15 (similar). For all the reasons described in Defendant's opposition, the Procurement Act easily satisfies this standard. *See* Defs.' Opp'n at 32–35.

## II.     Most Plaintiffs lack standing and none face irreparable harm.

Not all Plaintiffs in this case have demonstrated, with evidence, that they have standing. "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "[T]he plaintiff[s] can no longer rest on such mere allegations, but must set forth by affidavit or other evidence specific facts."[8] *Id.* Moreover, "[t]o succeed in demonstrating a threat of irreparable harm, 'a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief.'" *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (citation omitted). Plaintiffs have not carried this burden here.

*First,* Plaintiffs have no standing to bring *parens patriae* claims against the federal government for any claims and cannot claim irreparable injury from any purported harms to their citizens. *See* Defs.' Opp'n at 39. The Eighth Circuit's binding precedent is clear and has no exceptions: "A State does not have standing as *parens patriae* to bring an action against the Federal Government." *Iowa ex rel. Miller v. Block*, 771 F.2d 347, 354 (8th Cir. 1985) (quoting *Massachusetts v. Mellon*, 262 US 447, 485–86 (1923)). Plaintiffs make no effort to distinguish that binding precedent. Instead, Plaintiffs suggest that a footnote in *Massachusetts v. EPA* overruled, *sub silentio*, the well-established principle that a state cannot bring a *parens patriae* suit against the federal government. Reply at 18 (citing *Massachusetts*, 549 U.S. 497, 519–22 & n.17 (2007)).

---

[8] While Defendants did not raise the issue of standing in their opposition to Plaintiffs' motion for a preliminary injunction, it may do so now, especially given the higher evidentiary burden Plaintiffs must meet to receive a final judgment. *Lujan*, 504 U.S. at 561; *see also City & Cty. of Denver v. Matsch*, 635 F.2d 804, 807 (10th Cir. 1980) (examining the evidentiary threshold under Rule 65(a)(2))..

The last time Missouri argued that *Massachusetts* allowed it to bring *parens patriae* claims against the federal argument, the D.C. Circuit soundly rejected Missouri's arguments. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 176 (D.C. Cir. 2019). Missouri sought to challenge an agency's compliance with a statute on behalf of its citizens in its *parens patriae* capacity. *Id.* at 176. The D.C. Circuit held that Missouri "lack[ed] *parens patriae* standing to sue the federal government" and the court was "unpersuaded by [the] argument that *Massachusetts v. EPA* alters [this] longstanding" rule. *Id.* at 183. As the D.C. Circuit explained, "*Massachusetts v. EPA* is not a *parens patriae* case" because the state there established a direct injury as a landowner. *Id.* at 182.

Plaintiffs' reading of *Massachusetts* is also directly contrary to the manner in which the case has been interpreted and applied by numerous courts. *See, e.g.*, *Wyoming v. U.S. Dep't of the Interior*, 674 F.3d 1220, 1232 (10th Cir. 2012); *Oklahoma ex rel. Pruitt v. Sebelius*, No. 11-30, 2013 WL 4052610, at *3–4 (E.D. Okla. Aug. 12, 2013); *Florida ex rel. Cobb v. U.S. Dep't of Justice*, No. 5:10-cv-118, 2010 WL 3211992, at *1 (N.D. Fla. Aug. 12, 2010), *affirmed by* 440 Fed. App'x. 860 (11th Cir. 2011). And even if the law did not prevent plaintiff states from bringing a *parens patriae* claim against the federal government, there is insufficient evidence in the record to support such a claim here (no evidence of any harm to any citizen).

*Second*, Plaintiffs have a failure of proof when it comes to showing standing based on their own contracting with the Federal Government. To show standing (or irreparable injury), every plaintiff state must show "evidence in this case" that each is "very likely to bid" on contracts that contain the challenged clause. *Adarand Constructors, Inc. v. Pena*, 515 U.S. 200, 212 (1995). But Plaintiffs have not identified with the required specificity at this stage in the proceeding what contracts each Plaintiff plans to bid on that will contain the challenged clauses.

Some Plaintiffs provide no evidence at all, including Plaintiff states Arkansas, Montana,

or South Dakota. The claims of those states must be denied and those plaintiffs dismissed because there is no evidence supporting any claim for standing. For others, the evidence submitted does not support standing. New Hampshire, for example, provides no evidence that any of their contracts are higher than the $250,000 threshold required to be subject to the EO. *See* Pls.' Mem., Ex. H, Decl. of Patrick Hackley, ECF No. 9-8 ($9,240/year); Pls.' Mem., Ex. I, Decl. of David Scanlan, ECF No. 9-9 (all contracts fall under SAT Threshold); Pls.' Reply, Ex. E, Decl. of Orville B. Fitch, ECF No. 23-5 (clarifying clause will not be added to certain contracts).

Missouri likewise fails to identify a single contract that would give it standing. For example, a declaration by Mr. Dru Buntin of Missouri Department of Natural Resources (DNR) attached to the reply clarifies that DNR's agreements with GSA are "at or below the simplified acquisition threshold (SAT) or the simplified lease acquisition threshold (SLAT)" so "the proposed modifications are not mandatory." Pls.' Reply, Ex. D, Decl. of Dru Buntin, ¶ 4, ECF No. 23-4 (clarifying ECF No. 9-15). And while Mr. Buntin identifies other agreements, those agreements do not "meet the definition of a federal contract or contract-like instrument as those terms are defined in the Order," so DNR is "consequently [not] subject to any federal vaccine mandate." *Id.* ¶ 6. While Missouri identifies other existing contracts, ECF No. 9-14, there is no evidence about when those contracts expire, or if there are any options to renew. Nebraska's declarations have the same deficiencies. *See* Pls.' Mem., Ex. M, Decl. of Jason Jackson, ECF No. 9-13. And there is no evidence in the record about Missouri or Nebraska's plans on bidding on any specific contracts or whether those contracts would include the challenged clause.

Other states describe bilateral agreements to add the clauses to existing contracts, but those modifications can only happen upon mutual assent of the parties—a decision that is beyond the scope of the Executive Order and thus breaks any chain of causation back to the EO.

North Dakota faces an additional hurdle because it identifies *sub*-contracts that have been impacted by provisions modified in the prime contract. *See* Armacast Decl. "[W]hen the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily substantially more difficult to establish." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 562 (1992). "The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict," and it is "the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury." *Id.* (citations omitted). EO 14,042 exempts existing contracts, so any addition of the COVID-19 safety clause in an existing contract happened because of a voluntary, bilateral modification between the government and a third party not before the court, or through some agency-specific authority that does not depend on the Executive Order. Either way, North Dakota fails to show causation or redressability.

Iowa identifies a number of existing contracts that it voluntarily modified, but its choice to modify breaks the causal chain required to show standing. Pls.' Mem., Ex. G, Decl. of Kraig Paulsen, ECF No. 9-7. While Iowa identifies an Iowa State University contract that was unilaterally modified, *id.* ¶ 6, that modification was done pursuant to agency-specific authority that did not depend on EO 14,042, so that likewise cannot confer standing.[9] Iowa also fails to identify any

---

[9] In their opposition brief, Defendants acknowledged that the Iowa State contract with the Department of Energy (DOE) had been unilaterally modified. Defs.' Opp'n at 37 n.6. While the EO does not require modifications to existing contracts or non-covered contracts, the EO "strongly encourage[s]" agencies, "to the extent permitted by law," to ensure that all existing contracts and contract-like instruments also include the COVID-19 safety protocols. EO § 6(c). Modifications to existing contracts can be made by mutual agreement of the contracting parties. Agencies may also have independent contractual authority to unilaterally modify existing contracts. Such authority could include the ability to incorporate COVID safety protocols into existing contracts

future contracting opportunities that will include the clause. *Id.* ¶ 7 ("It is unclear which, if any, of [Iowa] agencies may also be asked or forced to adopt the Contractor Vaccine Mandate.").

Wyoming appears to be the only state plaintiff with standing. *See* Pls.' Mem., Ex. K, Decl. of Tara Evans ¶ 11, ECF No. 9-11 (identifying specific contracting opportunities over $250,000 in December 2021 and May 2022). So any relief should be limited only to Wyoming. But even Wyoming is not entitled to a permanent injunction because it does not face *irreparable* harm—it may always seek compensation under the Contract Disputes Act. *See* Defs.' Opp.'n at 37–38.

Plaintiffs' claim of "direct sovereign injuries," Pls.' Mem. in Support of Mot. for Prelim. Inj. at 37, ECF No. 9, likewise cannot create standing or irreparable injury. Defs.' Opp'n at 38–39; *see Fla. v. HHS*, 2021 WL 5768796, at *15 (rejecting similar argument, explaining that "it is black-letter law that the federal government does not invade areas of state sovereignty simply because it exercises its authority in a way that preempts conflicting state laws." (cleaned up)).

## III. The equities and the public interest weigh against injunctive relief.

The third and fourth requirements for issuance of an injunction—the balance of harms and whether the requested injunction will disserve the public interest—"merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, these factors tilt in the Defendants' favor for all the reasons explained in Defendants' brief. *See* Defs.' Opp'n at 39–42. The only new argument raised in Plaintiff's reply was that the government delayed implementing

---

and contracts outside of the categories identified in the EO. To that end, DOE issued an agencywide order instructing Contracting Officers to use their authority to modify contracts where they already have the authority to do so. *See DOE Order*, *available at* https://perma.cc/3LWH-CTTW; *see also* Defs.' Opp'n, Ex. 2, Decl. of Cody Benjamin, ECF No. 20-2.

Because standing is a jurisdictional issue that can be raised at any time and because Plaintiffs face a higher burden of proof to receive ultimate relief, Defendants now argue that Iowa has failed to demonstrate standing as well as irreparable harm, since it fails to show that DOE's unilateral modification in accordance with preexisting, mutually agreed-upon contract clauses is "fairly traceable" to the Executive Order. *Lujan*, 504 U.S. at 560–61.

the vaccine mandate until "nine months after the vaccines received emergency use approval." Pls.'
Reply at 20. This ignores that the FDA approved the first full license for a COVID-19 vaccine on
August 23, 2021, just two weeks before the President issued EO 14,042 on September 9. *See* FDA,
"FDA Approves First COVID-19 Vaccine," available at https://perma.cc/TNN7-QQD8. The gov-
ernment can hardly be faulted for waiting for full FDA approval of a vaccine before requiring
contractors to vaccinate their workforces. Moreover, the clarifying declarations Plaintiffs submit-
ted with their reply, Buntin Decl. and Pls.' Reply Ex. E, Decl. of Orville B. Fitch, ECF No. 23-5,
show less impact on state agencies, tipping the balance even more decisively in Defendants' favor.

## IV.    In all events, any relief should be limited.

Although relief is unjustified here, at a minimum, any such relief should be no broader than
necessary to redress Plaintiffs' alleged injuries. As the Supreme Court has explained, because this
Court's "constitutionally prescribed role is to vindicate the individual rights of the people appear-
ing before it," any "remedy must be tailored to redress the plaintiffs' particular injury." *Gill v.
Whitford*, 138 S. Ct. 1916, 1933–34 (2018); *see also Madsen v. Women's Health Ctr. Inc.*, 512
U.S. 753, 765 (1994). Here, any relief should be limited to harmed contracts identified in Plaintiffs'
motion, or, at most, to contracts subject to EO 14,042's mandate with the specific Plaintiff-states
that demonstrated standing to bring suit (so here, that is only Wyoming). And any relief should
block enforcement—but not inclusion—of a COVID-19 safety clause. *See* Defs.' Opp'n at 42–43.
In their reply, Plaintiffs do not dispute the scope of relief set forth in Defendants' opposition. Nor
can they: there is no basis for Plaintiffs to ask for more.

## CONCLUSION

For these reasons, Plaintiffs' request for relief under Rule 65(a)(2) should be denied.

DATED: December 10, 2021                    Respectfully submitted,

                                            BRIAN M. BOYNTON
                                            Acting Assistant Attorney General

                                            BRAD P. ROSENBERG
                                            Assistant Director

                                            */s/ Vinita Andrapalliyal*
                                            VINITA ANDRAPALLIYAL
                                            ZACHARY A. AVALLONE
                                            Trial Attorneys
                                            U.S. Department of Justice
                                            Civil Division, Federal Programs Branch
                                            1100 L Street NW
                                            Washington, D.C. 20005
                                            (202) 305-0845
                                            Vinita.b.andrapalliyal@usdoj.gov

                                            *Counsel for Defendants*