# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| STATE OF MISSOURI<br>STATE OF NEBRASKA<br>STATE OF ALASKA<br>STATE OF ARKANSAS<br>STATE OF IOWA<br>STATE OF MONTANA<br>STATE OF NEW HAMPSHIRE<br>STATE OF NORTH DAKOTA<br>STATE OF SOUTH DAKOTA, and<br>STATE OF WYOMING,<br><br>   *Plaintiffs*,<br><br> v.<br><br>JOSEPH R. BIDEN, JR.;<br>*et al.*<br><br>   *Defendants*. | No. 4:21-CV-1300 |

## PLAINTIFFS' RESPONSE TO THE COURT'S AUGUST 15, 2023 SHOW CAUSE ORDER

### INTRODUCTION

This case is not moot. Defendants voluntarily ceased the challenged action, and the dispute is capable of repetition yet evading review—two of the well-established exceptions to mootness. Dismissing this case on the ground of mootness would effectively allow the government to turn on and off the faucet of unlawful administrative action at will, giving Defendants control over whether or not their own actions are reviewed by a Court.

1

Defendant President Biden signed Executive Order 14042, requiring all government contractors to ensure their employees were vaccinated against COVID-19 or to take weekly COVID-19 tests at their own expense. Plaintiff-States challenged the President's authority to impose such sweeping personal health requirements—affecting millions of Americans—through the government contractor regulations. The previously undersigned judge granted a preliminary injunction prohibiting Defendants from imposing these requirements. During the Defendant's appeal of that injunction and following an unfavorable decision in the Fifth Circuit, the Administration revoked EO 14042. Plaintiffs agreed that Defendants' appeal before the Eighth Circuit was moot because the preliminary injunction enjoining the government from enforcing the mandate was no longer necessary. The fact that an injunction is no longer necessary to prevent harm from then-ongoing government action, however, does not render the underlying case moot. Instead, this dispute falls squarely within multiple exceptions to mootness. Plaintiffs respond to the court's show-cause order and provide a statement of the facts and arguments to support their position that proceeding with this case on the merits is necessary and appropriate.

## STATEMENT OF THE FACTS

On January 20, 2021, President Biden ("the President") signed Executive Order 13991, 86 Fed. Reg. 7045, which established the Safer Federal Workforce Task Force ("Task Force") to provide "ongoing guidance to heads of agencies on the operation of the Federal Government, the safety of its employees, and the continuity

of Government functions during the COVID-19 pandemic." 86 Fed. Reg. at 7046 (§ 4(a)); *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 27. On September 9, 2021, the President announced that he had signed an "executive order that will require federal contractors" to be vaccinated. *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 27. The President was referring to Executive Order 14042 ("EO 14042"). EO 14042 further required the Task Force to issue Guidance regarding adequate COVID-19 safeguards. 86 FR 50985.

On September 24, 2021, the Task Force issued Guidance implementing EO 14042. *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 27. The Guidance required federal contractors ensure that their covered employees were vaccinated against COVID-19, subject to legal accommodations. *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 27. Also, on or around September 24, the Acting Director of the Office of Management and Budget ("OMB") published in the Federal Register her determination that the Task Force Guidance will "improve economy and efficiency." *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 27.

To implement EO 14042 and the Task Force's Guidance, as approved by OMB, the Federal Acquisition Regulatory Council ("FAR Council") issued a memorandum on September 30, 2021 to "agencies that award contracts under the Federal Acquisition Regulation with initial direction for the incorporation of a clause into their solicitation and contracts to implement" the Guidance. *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 27.

On November 10, 2021, the Task Force updated the Guidance and changed

the date contractors' employees were required to be fully vaccinated from December 8, 2021, to January 18, 2022. *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 27. Also on November 10, 2021, the Acting Director of OMB filed for publication in the Federal Register her determination that the updated Guidance "will promote economy and efficiency in Federal contracting if adhered to by Government contractors and subcontractors." *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 27.

According to the Federal Government's System for Award Management, tens of billions of dollars of federal contracts feature Plaintiff-States as the place of performance. *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 27. On October 29, 2021, Plaintiffs filed the present lawsuit challenging the government's imposition of the contractor mandate as, among other things, an unlawful attempt by the federal government to usurp the States' police powers and as a violation of multiple statutory limitations on the government's authority. *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 1. On November 4, plaintiffs moved for a preliminary injunction. *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 8. Defendants filed their response in opposition on November 18, and plaintiffs filed their reply on November 22, 2021. *Missouri v. Biden*, 4:21-cv-01300-JSD, Docs. 20, 23. The parties filed supplemental briefs on the motion on December 10, 2021. *Missouri v. Biden*, 4:21-cv-01300-JSD, Docs. 28, 29. On December 20, 2021, this Court sustained the Plaintiffs' motion for preliminary injunction. *Missouri v. Biden*, 4:21-cv-01300-JSD, Doc. 36.

This court preliminarily enjoined the federal officials from enforcing the contractor vaccine mandate within the Plaintiff-States after deciding the States

were likely to prevail on the merits of their claim that EO 14042 exceeded the President's authority. *Missouri v. Biden*, 4:21-cv-01300-DDN, Doc 36. Other federal courts around the country agreed, with the Fifth Circuit, sitting *en banc*, affirming a similar preliminary injunction issued by another district court. *See Feds for Med. Freedom v. Biden*, 63 F.4th 366, 387 (5th Cir. 2023). The government appealed this Court's order, seeking reversal of this court's preliminary injunction. *Missouri v. Biden*, 22-1104, Doc. 43. After the President issued EO 14099, revoking EO 14042, Defendants filed an unopposed motion to voluntarily dismiss the appeal, explaining that the relief they sought from the Eighth Circuit was the reversal or narrowing of the preliminary injunction barring enforcement of EO 14042. Because Defendants revoked EO 14042 and the concurrent implementing guidance, the preliminary injunction challenged on appeal no longer had any effect. *Missouri v. Biden*, 22-1104, Doc. 60.

During the pendency of the Defendants' appeal, the Supreme Court concluded in another case that a challenge to an "emergency temporary standard" (ETS) issued by the Occupational Safety and Health Administration (OSHA) mandating that employers with more than 100 employees require their employees to undergo COVID-19 vaccination or take weekly COVID-19 tests at their own expense was likely to succeed on the merits. *See Nat'l Fed'n of Indep. Bus. v. Dep't of Lab.*, 142 S. Ct. 661, 664 (2022). Consequently, the Supreme Court stayed OSHA's rule pending final disposition. *Id.* at 667. The Court reasoned that the Act, which empowered the Secretary to set workplace safety standards but not broad public

health measures, and to issue emergency temporary standards to protect employees from grave danger in the workplace, did not plainly authorize the ETS. *Id.* at 666.

On May 9, 2023, the President unilaterally issued Executive Order 14099, which had the effect of, in part, revoking EO 14042 as of May 12, 2023. *See* Executive Order 14099, 88 FR 30891. Following EO 14099, Defendants sought (and received) Plaintiffs' consent for Defendants to voluntarily dismiss their appeal of the preliminary injunction. See Pls.' Resp. to Unopposed Mot. to Voluntarily Dismiss Appeal, *Missouri v. Biden*, 22-1104, at 2 (May 31, 2023). As Plaintiffs clarified to the Eighth Circuit, however, "while the States do not oppose the voluntary dismissal of the appeal, they do not agree that the case is moot." *Id.* at 2. As Plaintiffs observed in their response to Defendants' motion to voluntarily dismiss the appeal, "the Federal Government has not made any showing that it does not intend to use the same illegal methods" to either re-instate COVID-19 contractor vaccine mandates or "use the same illegal methods to implement other health mandates for federal contractors." *Id.* at 2–3. Consequently, Plaintiffs asserted that the Eighth Circuit "should determine only that the Federal Government has dismissed its appeal voluntarily, not that the Federal Government has met its 'heavy burden' of establishing mootness." *Id.* at 2 (citing *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022)).

The Eighth Circuit agreed. In dismissing Defendants' appeal of the preliminary injunction, the court noted that "the only relief from this court [Plaintiffs] had sought was the reversal or narrowing of the preliminary injunction

barring enforcement of EO 14042." Order, *Missouri v. Biden*, 22-1104, (June 7, 2023) at 3. "Because EO 14042 . . . 'can no longer be enforced[,]'" the Court concluded that the government's requested relief—reversal or narrowing of the preliminary injunction—can no longer be effectuated and "this appeal has become moot." *Id*. At no point did the Eighth Circuit address whether any aspect of the case besides Defendants' appeal of the preliminary injunction order was moot.

On August 15, 2023, this Court issued a Show Cause Order directing Plaintiffs to show cause why this case should not be dismissed as moot.

## ARGUMENT

### I. The Doctrine of Mootness and its Exceptions

A federal court has Article III jurisdiction when "an actual controversy" exists "through all stages of the litigation." *Kingdomware Techs., Inc. v. United States,* 579 U.S. 162, 163 (2016) (quoting *Already, LLC v. Nike, Inc.,* 568 U.S. 85, 90–91 (2013)). For a case to be dismissed as moot, a defendant must carry the burden of showing that "it can be said with assurance that there is no reasonable expectation that the alleged violation will recur"; and (2) "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cty. of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979). Only then will a court find that "the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law." *Id. See also, e.g.*, *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (holding that a case becomes moot "when the challenged conduct ceases such that 'there is no reasonable expectation that the

7

wrong will be repeated'") (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

There are two relevant and closely related exceptions to the doctrine mootness: (1) voluntary cessation of the challenged activity; and (2) when a wrong is capable of repetition yet evades review. *Northeastern Florida Chapter of Associated General Contractors of America v. City of Jacksonville, Fla.*, 508 U.S. 656, 662 (1993) (calling "well settled" the "rule that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'") (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)); *Honig v. Doe,* 484 U.S. 305, 318 (1988) ("[The plaintiff's] claims . . . are not moot if the conduct he complained of is 'capable of repetition, yet evading review.'") (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). A defendant may not merely stop a particular practice during litigation and receive automatic dismissal on mootness. The Supreme Court of the United States has held if there is some likelihood that the practice will continue or resume at a later date, the litigation is not moot. *Roman Cath. Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63, 68 (2020).

Likewise, a government agency or actor may not moot a challenge by merely changing or discontinuing its challenged policy. An agency may claim that voluntary cessation moots a challenge *only* if it is *absolutely clear* that the behavior cannot be expected to recur. *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007) (rejecting a challenge to plaintiff's standing after

8

the public entity "ceased" the challenged policy because "[v]oluntary cessation does not moot a case or controversy unless 'subsequent events ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" (quoting *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000)); *see also Adarand Constructors, Inc. v. Slater,* 528 U.S. 216, 220 (2000) (rejecting an argument that a case is moot after the federal government changed its policy because "[v]oluntary cessation of challenged conduct moots a case . . . only if it is '*absolutely* clear that the allegedly wrongful behavior [by the Defendants] could not be reasonably expected to recur.'" (quoting *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203 (1968)) (emphasis added in *Adarand*)). Importantly, the Supreme Court has held that the fact that a government has "ceased using" a particular policy or program "is not dispositive" of the question of whether the case is moot "since the [defendant] vigorously defends its program's constitutionality, and nowhere suggests that it will not resume" the policy or program at a later date. *Parents Involved,* 551 U.S. at 702.

Similarly, in *Roman Catholic Diocese of Brooklyn v. Cuomo*, the Supreme Court held that the Plaintiff's request for an injunction in their action challenging the New York Governor's Executive Order issued during the COVID-19 pandemic, limiting attendance at religious services was not moot despite the Governor's reclassification of areas with COVID-19 restrictions because the Governor regularly changed classifications of particular areas without prior notice. *Roman Cath. Diocese of Brooklyn,* 141 S. Ct. at 68. The Court reasoned that there was "no

9

justification" for denying injunctive relief, and the action was clearly not moot. *Id*. Similarly, in *Federal Election Commission v. Wisconsin Right to Life, Inc.,* the Court reasoned that even though the election cycle in question had passed, the cases "fit comfortably within the established exception to mootness for disputes capable of repetition, yet evading review" because it would be unreasonable to expect that the Plaintiffs could have obtained complete judicial review of their claims in time and it was sufficiently likely that the same controversy would recur in future election cycles. 551 U.S. 449, 462 (2007). The Court, therefore, held that the passing of the election cycle did not moot the dispute. *Id*.

## II. Plaintiffs' case is not moot because each of the exceptions of the doctrine of mootness apply.

### A. This case is not moot because the Defendants voluntarily ceased the challenged activity.

Like the cases cited above, this case falls squarely within the voluntary cessation exception to the doctrine of mootness. The Defendants argue that this case is moot because they have revoked EO 14042. *See* Executive Order 14099. However, the Defendants make *no assurances* that they will not reinstate an identical unconstitutional and unlawful EO or guidance if the number of COVID-19 cases were to increase, a new variant emerges, or some other event occurs that the Defendants deem appropriate to support such a regulation. The voluntary cessation of a policy does not (and cannot) render a case moot absent any "suggest[ion] that [Defendants] will not resume" the same policy at a later date. *Parents Involved*, 551 U.S. at 702.

10

In fact, when the Biden administration announced it would be revoking the EO 14042 vaccine mandate, it also touted the purported "health and safety" benefits and workplace efficiency of the vaccine requirements.[1] The administration went on to explain that it was removing the requirement because "we are now in a different phase of our response when these measures are no longer necessary." *Id*. However, this explanation implies that if, in the future, the administration deems we are in yet another "phase," it may once again become "necessary" to impose such a sweeping requirement.

Defendants' actions, in short, are the axiomatic example of "voluntary cessation." Nowhere in EO 14099—or, indeed, any statement by any Defendant—do Defendants suggest that they will not repeat the same actions again at their discretion. Indeed, there is nothing stopping Defendants from attempting to promulgate identical actions tomorrow, next week, or next month. Absent any "subsequent events" that "ma[ke] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," this case is not moot. *Parents Involved*, 551 U.S. at 719. This Court has already once determined that Plaintiffs are likely to succeed on the merits of their challenges to Defendants actions. The voluntary cessation exception to the doctrine of mootness prevents litigants from simply pausing their challenged activities just long enough to defeat receiving an

---

[1] *See* https://www.whitehouse.gov/briefing-room/statements-releases/2023/05/01/the-biden-administration-will-end-covid-19-vaccination-requirements-for-federal-employees-contractors-international-travelers-head-start-educators-and-cms-certified-facilities (last visited Aug. 30, 2023).

11

adverse final judgment. *Northeastern Florida Chapter of Associated General Contractors*, 508 U.S. at 662.

### B. This case is not moot because Defendants' actions, if permitted to be unreviewable, are capable of repetition yet evading review.

Plaintiffs' claims remain justiciable for the independent reason that Defendants' actions are capable of repetition yet, if permitted to render a case moot, would evade judicial review. Indeed, the vehicle for Defendants' unlawful actions—unilateral and unchecked executive action—is exactly the kind of action that falls under this exception to the mootness doctrine of being "capable of repetition, yet evading review" by a Court. *Honig*, 484 U.S. at 318. The doctrine applies to actions for which the duration of the action is "too short to be fully litigated prior to its cessation" and for which there is "a reasonable expectation that the same complaining party would be subjected to the same action again." *Weinstein v. Bradford*, 423 U.S. 147, 149 (1975).

Defendants began the unlawful actions at issue in this case with a stroke of the pen when President Biden issued EO 13991 and federal agencies took related actions. Numerous States and other Plaintiffs challenged these actions, and multiple federal courts enjoined Defendants' actions. *See, e.g.*, *Feds for Med. Freedom*, 63 F.4th at 387. Then, with another stroke of the pen, Defendants revoked the executive action—and argued that this second executive action allows them to avoid final judicial review. Defendants' sole justification for this second governmental action was the conclusion that reduction in COVID-19 numbers mean

12

that "we no longer need" the challenged action. EO 14099.

Defendants' behavior, if it is permitted to be used as a tool by Defendants to avoid judicial review, is *exactly* the kind of action which falls into the category of being "capable of repetition." After Defendants received adverse preliminary judgments from multiple federal courts, the Biden administration simply determined that COVID numbers had sufficiently decreased to warrant unilaterally revoking past executive actions. Given the fluid and ever-changing effects of COVID-19 and Defendants' assertion of executive authority to control behavior on this issue, Defendants could, without warning, over and over again impose and again remove identical vaccine requirements. Indeed, some news outlets have recently reported a new surge in COVID-19 numbers.[2] Defendants have never suggested that they would not re-institute their challenged actions at a later date.

Indeed, Defendants are fighting tooth and nail to retain the power to do *just that*. On March 23, 2023, the Fifth Circuit, sitting *en banc*, entered an order affirming the district court's grant of a preliminary injunction. If Defendants believed the executive order entered on May 9, 2023 rendered the matter moot, the Fifth Circuit's decision would have little effect. Instead, less than two months ago— on July 21, 2023—Defendants filed a Petition for Certiorari asking the Supreme Court to vacate the Fifth Circuit's decision affirming the preliminary injunction. *See* Petition for Certiorari, *Joseph R. Biden Jr. v. Feds for Med. Freedom*, No. 23-60

---

[2] *See, e.g.*, Julie Bosman, *Not Over Yet: Late-Summer Covid Wave Brings Warning of More to Come*, Aug. 28, 2023, https://www.nytimes.com/2023/08/28/us/covid-cases-hospitalizations.html (last visited Aug. 30, 2023).

13

(Jul. 21, 2023).

Defendants' actions, if allowed to render the case moot, are also capable of repeatedly evading review. Defendants already once revoked the unlawful actions in the face of adverse preliminary injunction decisions. This revocation occurred while several cases were ongoing and occurred before these ongoing cases could reach a final judgment. Given the unilateral nature of executive actions and the actions of Defendants challenged in this case, it would be unreasonable to expect that Plaintiffs could obtain a final judgment the second time that Defendants attempt the same action.

For these reasons, Defendants have not demonstrated the requisite permanent policy change, or assurances that they will not reinstate an identical unconstitutional and unlawful EO or guidance in the future and, therefore, have not met their burden to show the underlying action is moot.

## CONCLUSION

For the foregoing reasons, Defendants have failed to carry their burden of demonstrating that Plaintiffs' claims should be dismissed as moot and that neither of the exceptions to the doctrine of mootness apply to Defendants' voluntary cessation of the challenged actions. This Court should allow the case to continue to judgment.

Respectfully submitted,

ANDREW BAILEY
Missouri Attorney General

/s/ *Maria Lanahan*
Maria A. Lanahan, #65956
   *Deputy Solicitor General*
Office of the Attorney General
815 Olive St., Suite 200
St. Louis, MO 63101
(314) 340-4978
(573) 751-0774 (fax)
Maria.Lanahan@ago.mo.gov

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that, on August 31, 2023, a true and correct copy of the foregoing and any attachments were filed electronically through the Court's CM/ECF system, to be served on counsel for all parties by operation of the Court's electronic filing system and to be served on those parties that have not appeared who will be served in accordance with the Federal Rules of Civil Procedure by mail or other means agreed to by the party.

/s/ *Maria Lanahan*
Counsel for Plaintiffs
